Whitakee, Judge,
delivered the opinion of the court:
In our opinion filed February 5,1945 (102 C. Cls. 822,831), we held that the defendant had taken lands belonging to the Quinaielt Tribe of Indians and others “lying west of Qui-naielt Lake and between a line drawn from the 32% Male Post on the meander of the Lake, in accordance with the Executive Order, to the northwest corner of the reservation, and a line drawn from the 28% Mile Post on the meander of the Lake, in accordance with the Executive Order, to the northwest corner of the reservation.”
We also said that tribes other than the Quinaielt Tribe had an interest in these lands, but that the proof did not show what part of the value of them the Quinaielt Tribe was entitled to recover. Subsequently, Congress passed the Act of July 24, 1947 (61 Stat. 416), in which it declared that the Quinaielt Tribe was the proper party plaintiff in this proceeding, for the purpose of prosecuting the action to final conclusion on behalf of all Indians having rights in the reservation.
The only question now before us, therefore, is the valuation of the lands. The question of the respective interests of the various tribes and bands is not before us.
In our former opinion we did not fix the date upon which the defendant had taken plaintiffs’ lands. Plaintiffs say that *229 the date of the taking was the date of our former opinion, February 5, 1945. This, however, is manifestly incorrect. That opinion decided that the defendant had taken plaintiffs’ lands; the opinion itself did not constitute a taking, of course.
The Commissioner has based his findings upon the assumption that the lands were taken from 1892 to 1898. 1892 is the date the erroneous survey of the northern boundary of plaintiffs’ reservation was completed. 1898 is the date when the defendant completed its exercise of dominion over the entire tract. Between 1892 and 1898 some 488 acres of the entire 15,928.87 acres embraced within the tract had been entered by various homesteaders. On June 4, 1897, Congress passed an Act (30 Stat. 11, 34) withdrawing the remainder of the tract from public entry, and on March 1, 1898 these lands were made a part of the National Forest Reserve or were granted to the State of Washington.
It would seem clear that the defendant took these lands of the plaintiffs on various dates between 1892 and March 1, 1898.
The value of the land found by the Commissioner is their value on those dates.
The entire Quinaielt Indian Reservation comprised 200,-000 acres. The 15,928.87 acres which the defendant took, and for which plaintiffs sue, lay at the extreme northern part of the reservation. In the years 1892 to 1898 this acreage was, as one witness expressed it, “as remote then as China is today.”[1] There were no wagon roads to it or on it, there were no railroads and no water transportation. Its sole value was the timber on it, but the area was so rough and inaccessible that logging operations were extremely difficult, certainly not commercially profitable. There was no way to get the timber to market without the building of roads to the reservation and within the area of the reservation. .
Those who settled within the area between 1892 and 1898 settled along the shore of Lake Quinaielt. They cut such timber as they needed to build their homes and for firewood, but made no effort to log timber for sale on the market. *230 Only an unsubstantial portion of the acreage had any value for agricultural or grazing purposes.
Plaintiffs offered no proof as to the value of this timber in 1892 to 1898. Their entire proof related to its value on February 5,1945, the date of our former opinion. This evidence was properly excluded by the Commissioner. Plaintiffs admit it had no value from'1892 to 1898.
In the hearings before the Commissioner plaintiffs’ attorney stated:
In 1892 the timber had no market value because it was inaccessible and the market had not been developed. In 1892 the land had no market value for the same reasons. .
Plaintiffs, in their requested findings of fact, requested the Commissioner to find:
* * * The timber had no market value then [1900]. There was no way of getting the timber to any mill. * * * As late as 1903 the excluded area was “as remote as China,” as expressed by one witness who lived on Grays Harbor, a distance of about 50 miles from the excluded area. At that time the timber in the excluded area had only a potential value, but this potential value was immense, although this was not understood or known at the time. * * *
There was no way to get the timber out from the vicinity of the excluded area until the highway was built about 1921 or 1922. A logging railroad was built into this vicinity for the first time about the year 1924 or 1925.
The defendant offered the only testimony as to the value of the lands and timber between 1892 and 1898. One witness testified that it had a value of $22,375.00, and another one that it had a value of $25,000. The Commissioner has adopted the higher valuation and has found that it had a value of $25,000. We have adopted his finding.
On this amount plaintiffs, as a part of just compensation, are entitled to interest at five (5) percent from June 4,1897, to December 31, .1934, and at four (4) percent from December 31, 1934, to the date of judgment on January 9, 1951. *231 Alcea Band of Tillamooks, et al. v. United States, 115 C. Cls. 463. June 4, 1897, is the date the remaining lands in this reservation were withdrawn from public entry; prior thereto only a few acres had been definitely appropriated by defendant. June 4,1897, seems to be the proper date for interest to begin to run. So computed, the additional amount to which plaintiffs are entitled is $62,988.68, making a total amount which plaintiffs are entitled to recover of $87,988.68.
One other thing remains: The Jurisdictional Act under which plaintiffs sue, the Act of February 12, 1925 (43 Stat. 886), as amended, contains the proviso, “That the court shall also consider and determine any legal or equitable defenses, set-offs, or counterclaims including gratuities which the United States may have against any of said tribes or bands.”
The General Accounting Office has filed a report showing that the United States, between July 1, 1860, and June 30, 1943, has disbursed for the benefit of the plaintiff tribes and bands an amount of approximately $300,000. This report of the General Accounting Office is filed as defendant’s exhibit 21 in this case. In schedules of this exhibit, as set out in finding 11, there are listed amounts spent by the United States for the benefit of these tribes and bands under other than treaty obligations totalling $87,995.62. This amount the defendant is entitled to offset against the ■ amount of $87,988.68, which is found to be the value of the lands taken by the defendant, plus interest as a part of just compensation.
In view of these offsets, plaintiffs’ petition will be dismissed.
Howell, Judge; MaddeN, Judge; LittletoN, Judge; and JoNes, Chief Judge, concur.

 This was before the Korean war.